**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Elizabeth Winthrop

     v.                                             Case No. 19-cv-979-AJ

Omni Hotels Management Corp.

**ORDER**

The defendant in this slip-and-fall case moves to exclude the testimony of plaintiff's liability expert, George Melchior. (Doc. No. 39).  Plaintiff has objected to the motion, (Doc. No. 42), and defendant has replied (Doc. No. 44).  For the reasons that follow, defendant's motion is denied.

**Standard of Review**

"Federal Rule of Evidence 702 provides that '[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion' if his 'scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.'" United States v. Tetioukhine, 725 F.3d 1, 6 (1st Cir. 2013) (quoting Fed. R. Evid. 702).  In addition, an expert witness's testimony must be based "on sufficient facts or data" and must be "the product of reliable principles and methods" that the expert has reliably applied to the facts of the case. Fed. R. Evid. 702.  If an expert is found

to be qualified, his opinion testimony must then be evaluated under the balancing test of Federal Rule of Evidence 403. Tetioukhine, 725 F.3d at 6.  "The proponent of the evidence bears the burden of demonstrating its admissibility."  Id.

The court, however, "must stop short of weighing the evidence, evaluating credibility, or unnecessarily picking sides in a battle between experts."  Lawes v. CSA Architects and Eng'rs, LLP, 963 F.3d 72, 98 (1st Cir. 2020).  "So long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversarial process." Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 15 (1st Cir. 2011) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590 (2011)).  Generally, questions concerning an expert's experience and the factual basis and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility.  United States v. Varoz, 740 F.2d 772, 775 (10th Cir. 1984).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

## Discussion

This is a premises liability case.  The plaintiff, Elizabeth Winthrop, alleges that when she stepped on a rubber mat directly outside of the women's locker room at an outdoor pool at defendant's hotel in New Hampshire, the mat skidded out from under her feet, causing her to fall backwards and hit her head on the pavement.  Compl. (Doc. No. 1-1) ¶ 12.  Plaintiff further alleges that the bottom of the mat was coated in ice, which was "unrecognizable" when she stepped on it.  Id.  ¶ 13. Asserting a single count of negligence, plaintiff claims she slipped and fell due to Omni's failure to exercise reasonable care in the maintenance and operation of its premises. Specifically, plaintiff alleges that defendant utilized a floor mat that was unsafe, improper, and hazardous under the existing conditions.

On July 15, 2020, plaintiff served her expert disclosure, which included a report prepared by George Melchior, R.A., P.E., LEED AP, dated July 13, 2020.[1]  Melchior concluded that "Omni failed to provide an appropriate and safe floor mat at the doorway, and otherwise failed to maintain the exterior entry and egress walking surface in a condition safe for patron use

---

[1] Melchior's certifications are "Registered architect," "Professional Engineer," and "Accredited Professional," respectively.

. . . ." Melchior Rep. (Doc. No. 48-2) at 4. Melchior further opined that the accumulation of water, and the formation of ice, on, around and under the mat was foreseeable, given typical weather conditions in northern New Hampshire in February. Id.

The defendant argues that Melchior's opinion is legally deficient in two ways. First, Omni asserts that his opinion is based on insufficient and speculative data. Omni next argues that Melchior has not reliably applied his methodology to the data he reviewed.

A. Insufficient or Speculative Data

As far as data is concerned, Omni focuses on several issues. First, it asserts that Melchior's inability to examine the mat in question (which no longer existed, and thus also could not be examined by the defense expert) renders inadmissible his opinion that Omni used an inappropriate mat for the expected condition. However, Mr. Melchior appropriately relied on plaintiff's description of the mat, a sample of a "similar" mat provided by plaintiff, a review of weather conditions, and other matters disclosed in discovery. This is sufficient to ground Mr. Melchior's opinion. See, e.g., Morford v. Wal-Mart Stores, Inc., No. 2:09-cv-02251-RLH-PAL, 2011 WL 2313648, at *8-10 (D. Nev. June 9, 2011) (denying motion in limine to exclude mat expert's testimony where subject mat was unavailable to be tested or examined); see also Lee Valley

4

Tools, Ltd. v. Indus. Blade Co., 288 F.R.D. 254, 267 (W.D.N.Y. 2013) (noting that expert testimony is "not per se unreliable simply because it relies upon some unverified or inaccurate information provided by the expert's client.")

Omni next argues that Melchior relied on insufficient or speculative data about the concrete surface under the mat in question, the temperature of which is an important factor in determining whether there could have been ice underneath the mat when plaintiff slipped.  Omni notes that Melchior did not examine any technical data for the concrete pool deck in question, does not know the composition of the concrete used in the pool deck, and did not consider the concrete floor's thickness in the location where plaintiff allegedly fell. Melchior also does not know whether any sort of insulating barrier was placed between the concrete deck and the soil beneath.  Melchior concedes that all three of those factors – the composition of the concrete, the concrete's thickness, and the presence of an insulating barrier – would have affected the deck's surface temperature, and that if his assumptions on any of those factors are incorrect, then his calculated surface temperature of 28°-30° Fahrenheit is inaccurate.  Under that scenario, the floor surface could have been above freezing when plaintiff slipped.

In addition, citing Melchior's deposition, Omni points out that that when Melchior prepared his report, he was not generally aware that the pool deck was internally heated, nor did he have an understanding of the internal heating system or the temperature to which it was capable of heating the deck's walking surface.  At the same time, Melchior admitted that the presence of an internal heating system in the deck could change his calculation of the deck's surface temperature and that such could have kept that temperature above the freezing point.

The court does not disagree that the data upon which Melchior rested his opinions is less than complete.  But "whether [the expert] took shortcuts in his data collection efforts "is a matter affecting the weight and credibility of the testimony — a question to be resolved by the jury." Lawes, 963 F.3d at 102 (quoting United States v. Vargas, 471 F.3d 255, 264 (1st Cir. 2006) (quoting Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 545 (1st Cir. 1988))).

B. Application of Methodology to Data

This prong of the Daubert inquiry "seeks to ensure that there is an adequate fit between the expert's methods and his conclusions." Samaan v. St. Joseph Hosp., 670 F.3d 21, 32 (1st Cir. 2012).  Here, the court addresses the potential "problem that arises when an expert's methods, though impeccable, yield

results that bear a dubious relationship to the questions on which he proposes to opine." Id. If "'there is simply too great an analytical gap between the data and the opinion proffered,' the expert's testimony should be excluded." Id. (quoting Gen. Elec. Co. v Joiner, 522 U.S. 136, 146 (1997).

Omni argues that Melchior's opinion that the mat in use at the time of the accident was improper for the conditions must be rejected because Melchior, (who, like plaintiff's expert, was unable to examine the actual mat) had no empirical data concerning the mat's size, composition or friction characteristics. Def. Mem. (Doc. No. 39-1) at 18. But as the court has already observed, Melchior's reliance on plaintiff's description of the mat, and the conclusions he drew therefrom, go to the weight, rather than the admissibility of his opinions.

## Conclusion

For the reasons stated herein, defendant's motion to preclude the testimony of George Melchior (Doc. No. 39) is denied.

SO ORDERED

Andrea K. Johnstone
United States Magistrate Judge

February 11, 2021

cc: counsel of record

7